**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTHONY TORRES | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:03 CV424 (CFD)(WIG) |
| | : | |
| v. | : | |
| | : | |
| HONORABLE JOSPEH H. PELLEGRINO, | : | |
| HONORABLE JOHN J. LANGERBACH, | : | |
| HONORABLE TERENCE A. SULLIVAN, | : | |
| and KATHLEEN F. CHASE | : | |
| *Defendants.* | : | February 6, 2004 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

This is an action for declaratory and injunctive relief brought by the plaintiff, Anthony Torres, against the Honorable Joseph H. Pellegrino, Honorable John J. Langerbach, Honorable Terence A. Sullivan, and Kathleen F. Chase, all in their official capacities, pursuant to 42 U.S.C. § 1983. As in his original complaint, the plaintiff seeks a determination of the constitutionality of Conn. Gen. Stat. § 52-185(a) as applied to the facts set forth in the complaint. In addition, however, in his amended complaint, the plaintiff further asks this Court to enjoin "any and all Connecticut State superior, appellate and supreme court judge[s] . . . from their subsequent enforcement [of Conn. Gen. Stat. § 52-185(a)], sua sponte or by motion for dismissal initiated by any named defendant and/or adverse party in any contemplated State civil action." Amended Compl. at ¶ 3 (emphasis added).

Because, as discussed below, the injury that the plaintiff seeks redress from merely is conjectural or hypothetical, the plaintiff lacks standing to maintain this action.[1] In the

[1]Because, essentially, this complaint differs from the plaintiff's original complaint solely in the relief requested, this memorandum addresses this additional requested relief. In addition to the

alternative, the issue presented is not ripe for adjudication. Consequently, this action should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I. FACTUAL BACKGROUND

The amended complaint alleges the following facts that are pertinent to this motion: The amended complaint alleges that the plaintiff is an indigent inmate, currently incarcerated at the Northern Correctional Institution ("Northern"). Amended Compl. at ¶ 7, 13. The amended complaint alleges that, before being transferred to Northern, the plaintiff was incarcerated at the Cheshire Correctional Institution ("Cheshire"). Amended Compl. at ¶ 13. While at Cheshire, the amended complaint alleges that the plaintiff had "unobstructed access to the Connecticut Superior Court for the Judicial District of New Haven . . . when filing a State common-law personal injury tort action covering the period of 1999 and 2000." Amended Compl. at ¶ 13. The amended complaint further alleges that "[d]uring that specific period, the clerk's office at the Superior Court in New Haven automatically waived any prisoner pro se plaintiff from the requirements of [§ 52-185(a)]."[2] Amended Compl. at ¶ 13.

In September, 2000, the amended complaint alleges that the plaintiff was transferred to Northern, "where he allegedly sustained personal injuries" at the hands of several Northern

---

arguments presented above, the defendants also rely on those presented in their original motion to dismiss and supporting memorandum, filed with the Court on December 29, 2003.

[2]Conn. Gen. Stat. § 52-185(a) provides:

> If the plaintiff in any civil action is not an inhabitant of this state, or if it does not appear to the authority signing the process that the plaintiff is able to pay the costs of the action should judgment be rendered against him, the plaintiff shall, before the process is signed, enter into a recognizance to the adverse party with a financially responsible inhabitant of this state as surety, or a financially responsible inhabitant of this state shall enter into a recognizance to the adverse party, that the plaintiff shall prosecute his action to effect and answer all costs for which judgment is rendered against him. The recognizance shall not be discharged by any amendment or alteration of the process between the time of signing and of serving it.

employees. Amended Compl. at ¶ 14. The amended complaint alleges that, as a result of the aforementioned conduct, the plaintiff brought an action in the New Haven Superior Court, captioned Torres v. Butler, et al. Amended Compl. at ¶ 14. The amended complaint further alleges that the New Haven court transferred this action to the Judicial District of Tolland at Rockville ("Rockville"). Amended Compl. at ¶ 14.

The amended complaint alleges that, after filing the Butler action, Northern employees committed additional acts against the plaintiff that, although were connected to the Butler action, "could not be incorporated [with the Butler] action at that specific time period." Amended Compl. at ¶ 15. Consequently, on December 23, 2002, the amended complaint alleges that the plaintiff mailed the summons, complaint and waiver of fees application and various other legal papers in a new action, captioned Torres v. Casey, et al., to the defendant Kathleen F. Chase, the Chief Civil Clerk at Rockville. Amended Compl. at ¶ 15, 16. The amended complaint alleges that "the plaintiff had left the . . . bond [recognizance] section of the Summons (JD-CV-1) Form completely blank as he customarily [did] when filing and processing a civil action . . . in New Haven." Amended Compl. at 16. The amended complaint further alleges that the plaintiff left this section blank because he "is indigent and no association with any person who can step forward to be recognized in his behalf to prosecute [a] civil action in the amount of $250.00" Amended Compl. at ¶ 2.

On January 9, 2003, the amended complaint alleges that Chase informed the plaintiff that the defendant, the Honorable Terence A. Sullivan, the Administrative Judge at Rockville,[3] instructed Chase "'not' to file and/or process the plaintiff's legal papers without the recognized

[3]The Honorable Jonathan J. Kaplan has replaced Judge Sullivan as the administrative judge in Rockville and, accordingly, should be substituted as a defendant.

bond." Amended Compl. at ¶ 17. The amended complaint alleges that, as a result, the plaintiff's legal papers were returned to him. Amended Compl. at ¶ 17.

The amended complaint alleges that, by preventing the plaintiff from "filing and later adjudicating his civil action," the defendants violated his federal constitutional rights of access to the courts, due process and equal protection. Amended Compl. at ¶ 28. The amended complaint seeks declaratory and injunctive relief to prohibit the defendants from using Conn. Gen. Stat. § 52-185(a) as a means of preventing the plaintiff from both "filing and adjudicating" future civil actions.[4] Amended Compl. at 1; Prayer for Relief at B, C.

On December 11, 2003, the undersigned attorney sent a letter to the plaintiff, assuring him that "the clerks for the judicial district of Tolland at Rockville will accept and process all future civil actions, even when the recognizance section of the summons form has not been completed." Letter to Plaintiff attached as Exhibit 1. Moreover, the letter requested that the plaintiff refile his state complaint. Exhibit 1. The letter concluded with the statement "[b]y enabling you to refile your state tort action, I am in no manner representing that any or all defendants will not subsequently move to dismiss your action for failure to file a bond or a recognizance." Exhibit 1.

On December 29, 2003, having not received a response from the plaintiff, the undersigned attorney filed a motion to dismiss the original complaint and an accompanying

[4] The amended complaint also requests an award of costs and attorneys fees. However, the plaintiff has been given in forma pauperis status. Thus, his costs are limited to the $150 filing fee. Additionally, " a pro se litigant . . . is not entitled to attorney's fees," pursuant to 42 U.S.C. § 1988. Kay v. Ehrler, 499 U.S. 432, 435 (1991) (emphasis in original); Hawkins v. 1115 legal Serv. Care, 163 F.3d 684, 694 (2d Cir. 1998).

memorandum .[5] In addition, the undersigned attorney sent a second letter to the plaintiff. See Letter to Plaintiff attached as Exhibit 2.

On January 2, 2004, the undersigned attorney received a letter from the plaintiff in which he refused to refile his state complaint on the grounds that it would be futile to do so if the state defendants could subsequently move to dismiss it for failure to provide a bond or recognizance. See Letter to Undersigned Attorney attached as Exhibit 3.

## II. STANDARD OF REVIEW

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." Sicignano v. United States, 127 F. Supp. 2d 325, 328 (D. Conn. 2001) (quoting Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). However, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

## III. ARGUMENT

### A. PLAINTIFF'S HYPOTHESIS THAT HIS REFILED STATE COMPLAINT SUBSEQUENTLY WILL BE DISMISSED IS TOO SPECULATIVE TO ESTABLISH THE SORT OF CONCRETE INJURY REQUIRED FOR ARTICLE III STANDING

In addition to the relief the plaintiff requested in his original complaint, the plaintiff now moves this court to issue a declaratory judgment and an injunction prohibiting, not just any of the

[5] In the plaintiff's memorandum in opposition to the defendants' first motion to dismiss, the plaintiff questions why the defendants did not address the allegations contained in the amended complaint in that motion. Simply stated, the defendants did not receive a copy of the amended complaint until after that motion has been filed with the Court.

named defendants, but "any and all Connecticut State superior, appellate and supreme court judge[s] . . . from their subsequent enforcement [of Conn. Gen. Stat. § 52-185(a)], sua sponte or by motion for dismissal initiated by any named defendant and/or adverse party in any contemplated State civil action."  Amended Compl. at ¶ 3 (emphasis added).  In his letter to the undersigned attorney, the plaintiff asserts that, because once the clerk has accepted his complaint, a defendant could subsequently move to dismiss it for failure to file a bond or recognizance, his constitutional rights are still being violated.  See Exhibit 3.  Although the question of the constitutionality of Conn. Gen. Stat. § 52-185(a), as applied to those facts, may be a proper issue before a Superior Court judge in the context of a state court action, this potential injury is too speculative to meet the requirements of Article III standing.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'"  Valley Forge College v. Americans United for Separation of Church and State, 454 U.S. 464, 471 (1982).  Thus, the threshold question in every federal case is "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  An essential element of this inquiry is whether the plaintiff has standing.

A party seeking to invoke federal jurisdiction bears the burden of establishing, at a minimum, that he has: (1) "suffered an 'injury in fact,' i.e., an invasion of a judicially cognizable interest which is concrete and actualized, rather than conjectural or hypothetical"; (2) that his injury was caused by the defendant's conduct; and (3) "that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Center For Reproductive Law & Policy v. Bush, 304 F.3d 183, 191 (2d Cir. 2002) (citing Lujan v. Defenders of Wildlife,

504 U.S. 555, 560-61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561.  The plaintiff can not satisfy this burden.

To satisfy the injury-in-fact requirement, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (quoting Massachusetts v. Mellon, 262 U.S. 447, 488 (1923)).  "Abstract injury is not enough." Id. at 101; Shain v. Ellison, No. 02-9262, 2004 U.S. App. LEXIS 775, at *1 (2d Cir. Jan. 20, 2004); Baur v. Veneman, No. 02-6249, 2003 U.S. App. LEXIS 25927, at *17-18 (2d Cir. Dec. 16, 2003) ("[T]o support standing, the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur.").

To meet the causation prong of the standing test, the defendant must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)) (emphasis added).  In other words, when:

> [t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

Id. at 562 (citation omitted) (internal quotation marks omitted).  The plaintiff cannot satisfy either the injury-in-fact or the causation prong of the test for Article III standing.

The plaintiff envisions a scenario in which he successfully files a complaint in state court without providing a recognizance, only to be confronted with a motion to dismiss for failure to provide that very recognizance. Although such a scenario is possible, it is far from imminent and, in fact, may never occur. Additionally, the parties who will determine whether to bring such a motion are, as of now, unidentified and, more importantly, not before this Court.

Once the plaintiff has filed his state complaint, in order for the plaintiff to be injured by the enforcement of § 52-185(a), the defendants named in that complaint must move to dismiss the complaint for the plaintiff's failure to provide a bond or recognizance. Conn. Gen. Stat. § 52-185(d) provides in pertinent part:

> If there has been a failure to comply with the provisions of this section, or if the authority signing a writ has failed to certify in accordance with any statute or rule that he has personal knowledge as to the financial responsibility of the plaintiff and deems it sufficient, the validity of the writ and service shall not be affected unless the failure is made a ground of a plea in abatement. . . .

(emphasis added). Consequently, the defendants in this action have no ability to sua sponte effect a dismissal of the plaintiff's future envisioned action pursuant to § 52-185(d).[6]

---

[6]Although the amended complaint insinuates that a Superior Court judge might sua sponte dismiss a state court action for failure to comply with Conn. Gen. Stat. § 52-185, the failure of a plaintiff to comply with the aforementioned section simply deprives a court of personal jurisdiction over the plaintiff's complaint. See Quinones v. Armstrong, No. CV-02-0816230, 2002 Conn. Super. LEXIS 3724, at *9 (Conn. Super. Ct. Nov. 21, 2002). Because a defendant may waive its right to assert that a court lacks personal jurisdiction over a plaintiff, it would be improper for a court to sua sponte question the failure of a plaintiff to provide a bond or recognizance. See Connor v. Statewide Grievance Comm., 260 Conn. 435, 446 (2000) ("Even had service by the plaintiff been improper, the alleged defect raised only a matter of in personam jurisdiction, which the defendant failed to challenge. . . . The trial court acted improperly, therefore, when it, sua sponte, questioned whether the plaintiff's service of the appeal had been defective."). See also Practice Book § 10-32 ("Any claim of lack of jurisdiction over the person . . . is waived if not raised by a motion to dismiss . . . .").

Furthermore, it is pure speculation that the defendants named in a future state complaint, whoever they may be,[7] will choose to make such a motion. It is also possible, though again merely speculative, that this hypothetical defendant might move for a dismissal of the complaint on other grounds, pursuant to Practice Book § 10-31, such as lack of subject matter jurisdiction, improper venue, or improper service of process. See Practice Book § 10-31.

Assuming that this defendant does move to dismiss the complaint pursuant to § 52-185(a), however, this Court further must assume that a Superior Court judge will reject the plaintiff's arguments that this statute is unconstitutional and dismiss the complaint. Even at this point, however, the plaintiff necessarily has not been harmed, as he may exercise his appellate rights.

Given the above, it is clear that the additional injury that the amended complaint alleges is too speculative to support Article III standing. Consequently, for this reason, and those asserted in the defendants' motion to dismiss the plaintiff's original complaint, the Court must dismiss the amended complaint in its entirety.

**B. IN THE ALTERNATIVE, PLAINTIFF'S HYPOTHESIS THAT HIS REFILED STATE COMPLAINT SUBSEQUENTLY WILL BE DISMISSED IS NOT RIPE FOR ADJUDICATION**

Not only does the plaintiff lack standing to bring his amended complaint, his additional request for relief, namely, a declaratory judgment and an injunction prohibiting any named or

[7]The amended complaint indicates that the likely defendants in at least one of the plaintiff's contemplated civil action include Northern employees. Although these defendants, depending on the accusations made against them, may be represented by the Office of the Attorney General, it is not a foregone conclusion. Furthermore, the amended complaint requests declaratory and injunctive relief against "any . . . adverse party in any contemplated State civil action." Amended Compl. at ¶ 3.

unnamed defendant from seeking to enforce Conn. Gen. Stat. § 52-185(a) after the clerk has accepted and processed his state complaint, is not ripe for adjudication.[8]

"An issue is ripe for judicial resolution only if it presents 'a real, substantial controversy,' not a mere hypothetical question.'" Longway v. Jefferson County Bd. of Supervisors, 24 F.3d 397, 400 (2d Cir. 1994) (quoting AMSAT Cable Ltd. v. Cablevision of Conn., 6 F.3d 867, 872 (2d Cir. 1993)). A case "lack[s] ripeness when it 'involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.'" AMSAT Cable Ltd., 6 F.3d at 872 (quoting 13A C. Wright, A Miller & E. Cooper, Federal Practice & Procedure § 3532.2 at 141 (2d ed. 1984)). The purpose of this doctrine, "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements. Id. at 872.

As has been demonstrated previously, the plaintiff's request for the issuance of a declaratory judgment and an injunction against not just these defendants, but any future adverse parties, that would prohibit them from applying Conn. Gen. Stat. § 52-185(a) clearly is based on uncertain and contingent future events. Namely, to reach this issue, the Court must imagine a future state action brought by the plaintiff against different defendants who, of their own

---

[8]As the Second Circuit recently explained, although often conflated, there are two forms of ripeness, which "are not coextensive in purpose." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003).

> The first of these ripeness requirements has as its source the Case or Controversy Clause of *Article III of the Constitution*, and hence goes, in a fundamental way, to the existence of jurisdiction. The second is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it.

Id. (emphasis in original). Consequently, even if this Court should determine that the plaintiff's causes of action are ripe for adjudication for purposes of Article III, the Court nonetheless may decline to exercise jurisdiction when, "at some later time . . . the issues will be more amenable to a final resolution." Id. at 359. Given that the plaintiff is challenging the constitutionality of a state statute, the Court should be particularly careful about premature adjudication. Artway v. Attorney Gen. of New Jersey, 81 F.3d 1235, 1249 (3d Cir. 1996) ("Courts are particularly vigilant to ensure that cases are ripe when constitutional questions are at issue.").

volition, make the decision to dismiss the action for the plaintiff's failure to file a bond or recognizance. However, even if the defendants do choose this path, a Superior Court judge still must rule in favor of the defendants, and this decision must be sustained throughout the appellate process.

Although such a scenario is plausible, clearly, "circumstances have not yet developed to the point where the court can be assured that a live controversy exists." 15 James Wm. Moore et al., Moore's Federal Practice § 101.71 (3d ed. 2003). Therefore, even if the court concludes that the plaintiff has Article III standing to proceed with this action, the complaint must be dismissed, as the issues presented therein are not ripe for adjudication.

## IV. CONCLUSION

For the reasons set forth above, the defendants respectfully request that the Court dismiss the plaintiff's amended complaint

DEFENDANTS,
HONORABLE JOSEPH H. PELLEGRINO,
HONORABLE JOHN J. LANGERBACH,
HONORABLE TERRANCE A. SULLIVAN,
KATHLEEN F. CHASE

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: ______________________

Philip Miller
Assistant Attorney General
Federal Bar No. ct25056
55 Elm Street
PO Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Email: phil.miller@state.po.ct.us

**CERTIFICATION**

I hereby certify that a copy of the foregoing memorandum of law was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 6th day of February, 2004, first class postage prepaid to:

Anthony Torres, Pro se
Inmate #246027
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT 06071

Courtesy copy mailed to:

Honorable William I. Garfinkel
915 Lafayette Boulevard
Bridgeport, CT 06604

________________________________
Philip Miller
Assistant Attorney General